I concur in the opinion of Mr. Chief Justice ADAMS. If this were just another criminal case I would be content to say no more, but when a youth of eighteen goes berserk and on the most flimsy pretext fires ten bullets into the body of a companion who befriended him, he was accorded a fair trial and convicted of murder in the first degree and sentenced to atone with his life, I think it appropriate to post the road that led him to the tragedy and hang a red light where he took it.
I am somewhat skeptical of the adequacy of the criminal law to cope with a case like this, but adequate or inadequate, I do not think the condemned boy had a chance. He was the product of a delinquent home, the kind denominated by criminologists and police officers as the most prolific breeder of the criminal class. The facts in this case are gruesome enough to alert any parent to parental responsibility, but the dearth of it here causes one to wonder if they had joined the school of psychology which teaches that children be not restrained but permitted to give free expression to their impulses whether they tend to be savage or benevolent. Such a philosophy overlooks the fact that through ages society has evolved a code of ethics *Page 714 
which ultimately demands that those who travel roughshod over others be required to stew in their own juice.
Approved parental discipline does not contemplate the imposition of such harsh rules and repressive regulations as will drive a child "nuts" or commit him to a retreat for neurotics. It relies on a system of precepts that instill respect for authority, devotion to duty, regard for the rights of others and a liberal tolerance for the views of others. The teaching of such precepts leaves one with an abiding conviction that good manners and common courtesy are assets, not liabilities, and above all, that God is the ruling power in the universe. Liberally expounded, such precepts impress one with the worth of the individual and his right to life, liberty and the pursuit of happiness, that human life is sacred and that I have no right to take that which I cannot restore. They convince one that every opportunity implies an equal obligation and every right a responsibility, that our country owes no man a living but that it owes all men an opportunity to make a living, that one's word is as good as his bond, that labor whether mental or manual is dignified and that truth, justice and character are most fundamental to our social order.
The difference between a potential murderer and a potential college president may not be material if measured by his intelligence quotient, but it is very material when measured by conviction to the code of moral precepts here detailed. If the appellant had gone from home anchored to such a code he would have escaped the tragedy into which he was sucked. Ask any police officer how many delinquents he has taken into custody who had it. It is persuasive enough that delinquent parents need to pick up their responsibility where they dropped it and implement something moral — indeed something spiritual — into the bread and butter, and beef and potatoes, and gadgets they live by. They need to make such teaching a habit as constant as going to bed at night; it is not enough that it be an occasional impulse. It will give the child something akin to a golden rule complex and make him competent for citizenship in a Christian democracy. It will shunt him off the road to the correctional institute and the penitentiary; it will pay dividends in pride of family and save us from loads of remorse.